## Case No. 6,748.

### HOW et al. v. KEMBALL et al.

[2 McLean, 103.] [1]

Circuit Court, D. Illinois. June Term, 1840.

BILLS AND NOTES — INCREASE OF LIABILITY BY INDORSEMENT — PARTIES TO THE CONTRACT — RIGHTS OF ASSIGNEE—STATUTE OF FRAUDS—CONSIDERATION.

1. An indorser of a note who increases his liability, by indorsement, beyond what the law implies, is to be considered as a guarantor. And this new contract can only be enforced between the parties to it.

2. It does not pass to any subsequent assignee. The late decisions in England require an agreement to pay the debt of another to state in it the consideration.

3. Under the statute of frauds, the consideration is a part of the agreement, which must be in writing. Prior to these decisions the rule was otherwise. And the latest decisions seem not very strictly to sustain this construction.

4. In this country the weight of authority does not coincide with the English rule. But in this case the guarantors are the holders of the note, and their guaranty is a part of the transfer of it, which imports a consideration.

[Cited in Perry v. Swasey, 66 Mass. (12 Cush.) 38; Clay v. Edgerton, 19 Ohio St. 553.]

[This was an action on a promissory note by Calvin W. How & Co. against Kemball and others.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

Beaumont & Skinner, for plaintiffs.
Mr. Spring, for defendants.

OPINION OF THE COURT. This action is brought by the plaintiffs as assignees of the following note:

"On the 20th of August, 1838, we jointly and severally promise to pay James Kinza, or order, the sum of three thousand nine hundred dollars, with seven per cent. interest per annum from the date hereof, for value received of him. Mark Beaubien, Jr., Mark Beaubien, Sr. Chicago, August 20, 1837."

Indorsed:

"I assign the within note to Benjamin Harris, without any recourse on me. October 10, 1837. James Kinza."

"I hereby guaranty the payment of the within note, unconditionally. Benjamin Harris."

"We guaranty the payment of the within note, at the Chicago branch of the State Bank of Illinois. Kemball & Porter, A. Garrett, George W. Dale."

In the first count in the declaration, the plaintiffs, who are the last assignees, set out the note and the assignments, and aver that when the note became payable, the said Mark Beaubien, Jr., did not reside in Illinois, but in Michigan; and that, the 24th August, 1838, at the city of Chicago, the said plaintiffs instituted a suit on the note against Mark Beaubien, Sen., against whom judgment was entered. That execution on the judgment was issued, which was returned "No property." The second count contains the assignments, and the note, &c., as the first count. The third count contains the note, the assignments, and avers that the defendants assigned, and then and there guarantied the payment of the said note, on the day it should fall due, and payable at the Chicago branch of the State Bank of Illinois, &c. And that when the note became due suit was brought, &c. The fifth count sets out the note, the assignments, and avers that the defendants promised to guaranty, and did guaranty, the same, as above, &c. The sixth and seventh counts are substantially the same as above. The defendants pleaded the general issue. And, on the trial, an objection was made to the introduction of the note, and the indorsements thereon, on the ground that, in the first and second counts, the assignments of the note, merely, are set out, whilst the indorsements, under which the plaintiffs claim, is a guaranty to pay the note at the Chicago branch of the State Bank of Illinois. And this guaranty, it is contended, is not evidence under the other counts, because the action is not brought on it, and no consideration for the guaranty appears either on its face, or from the averments in the declaration.

The indorsement of the note by the defendants to the plaintiffs, is not a mere assignment of the note, but the indorsers guaranty

the payment of the amount, when due, at a specific place. This created a liability somewhat different from that which the law implies from an ordinary indorsement. On the face of the note no place of payment is designated. The indorsement, then, changes the place of payment, and binds the indorsers as guarantors for the amount. This, to some extent, at least, must be considered a new contract. A contract which can only be enforced by the plaintiffs with whom it was made. Had they assigned the note, this guaranty, by the defendants, would not have passed to the assignee, as would a guaranty given at the creation of the note. It was a new contract, so far as a different liability from a simple indorsement was incurred, not incorporated in the note, nor transferable by its indorsement. In the case of Oxford Bank v. Haynes, 8 Pick. 423, it was held, that where upon a promissory note, made by S. and A. to the plaintiffs, were written the words, "I guaranty the payment of the within note," which were signed by the defendant, that he was a guarantor, and not a surety. If the indorsement of the defendants be considered a guaranty, the action must be upon it as a special agreement, or upon the consideration which induced the defendants to enter into it. 2 Cox, 172; 2 Boom, Com. Law, 66, 614; 2 Sch. & L. 112; Chit. Bills (Ed. 1839) 373. The third count in the declaration, and the counts that followed it, set out the guaranty, and the breach, &c. And here a question is raised, and elaborately argued, whether this guaranty is binding, as it states no consideration. That this is an undertaking by the defendants to pay the debt of another, which by the statute of frauds must be in writing; and that, as a consideration is essential to the validity of every such agreement, it must be stated in the agreement. The statute of frauds of this state, in regard to this question, is, substantially, copied from 29 Car. II. c. 3, § 4. "No action shall be brought whereby to charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or of some other person thereunto by him lawfully authorized."

Whether the consideration constitutes an essential part of the agreement, which, by the act, must be in writing, is a question that has been much discussed in England and in this country, and upon which courts have differed in their decisions. Until the decision of the case of Wain v. Warlters, 5 East, 10, was decided, Lord Ellenborough said, "We had always taken the law to be clear, that if a man agreed, in writing, to pay the debt of another, it was not necessary that the consideration should appear on the face of the writing; and so understand-

ing the law we have no authority or disposition to change it." The action of Wain and another was brought against Warlters, as the assignees and holders of a bill of exchange, drawn by one Gore, and accepted by one Hall, which was due, and for the payment of which the defendant gave the following promise in writing: "Messrs Wain & Co., I will engage to pay you by half-past four this day, fifty six pounds and expenses on bill, that amount on Hall." On this promise the plaintiffs alleged that they stayed proceedings, &c.; but the court held that it was not binding, as the consideration, which was a part of the agreement, was not stated in it. That without a consideration the agreement was inoperative, and that they might as well hear parol proof of the promise as the consideration. This decision has been much examined in England, and in several late cases has been confirmed. And particularly in the cases of Saunders v. Wakefield, 4 Barn. & Ald. 595; Jenkins v. Reynolds, 3 Brod. & B. 14; James v. Williams, 5 Barn. & Adol. 1109; Clancy v. Piggott, 2 Adol. & E. 473. The same doctrine has been sanctioned in the cases of Leonard v. Vredenburg, 8 Johns. 29; Larson v. Wyman, 14 Wend. 246. It has been denied in the cases of Hunt v. Adams, 5 Mass. 360; Packard v. Richardson, 17 Mass. 122; Levy v. Merrill, 4 Greenl. 180; Id. 387; Sage v. Wilcox, 6 Conn. 81; Miller v. Irvine, 1 Dev. & B. 103; [Violett v. Patton] 5 Cranch [9 U. S.] 151, 152. In Ex parte Minet, 14 Ves. 189, Lord Eldon said, there was a variety of authorities directly contradicting Wain v. Warlters, 5 East, 10, and in Ex parte Gardom, 15 Ves. 286, he says, "Until that case was decided I had always supposed the law to be clear, that if a man agreed, in writing, to pay the debt of another, it was not necessary that the consideration should appear in the writing."

On reading the late English decisions on this subject, I cannot perceive the conclusiveness of the reasoning of the judges. Nor can I perceive the danger of subverting the object of the statute, by adhering to what Lords Eldon and Ellenborough considered, before the decision of Wain v. Warlters, its settled construction. And it will be found that in some of the latest decisions in the queen's bench, if the above case has not been departed from, its principles have not been very strictly adhered to. An individual agrees, in writing, to pay the debt of another. It is admitted that without a consideration such an agreement is not binding. But why may not the consideration be proved by parol? This, the court say, would open the door to fraud, which the statute of frauds intended to close. That as no agreement is valid without consideration, therefore the consideration is an essential part of the agreement, and must be in writing. So a consideration is essential to the validity of a deed; and yet, where the deed

upon its face expresses no consideration one may be proved by parol. Peacock v. Monk, 1 Ves. Sr. 128; White v. Weeks, 1 Pen. & W. 486; Davenport v. Mason, 15 Mass. 85; Hartley v. M'Anulty, 4 Yeates, 95.

"No court of common law has ever said that there should be a consideration directly between the persons giving and receiving the guaranty. It is enough that the person, for whom the guarantor becomes surety, has benefit, or the person to whom the guaranty is given, suffers inconvenience, as an inducement to the surety to become guaranty for the debtor." Comyn, Cont. 242. In the case of Newbury v. Armstrong, 6 Bing. 201, the court held that the consideration sufficiently appeared on the following guaranty: "I agree to be security to you for J. C., late in the employ of J. P., for whatever you may intrust him with while in your employ to the amount of £50." Mr. Justice Burrough observed, "Whatever is necessarily implied may be taken to be in the instrument." And Chief Justice Tindall remarked, "We ought not to be too strict in the construction of these instruments; for if every agreement entered into by a tradesman be so minutely criticised, it will be necessary to resort to an attorney in the most common intercourse of life." In the case of Davies v. Wilkinson, decided in the queen's bench, May, 1839, and reported in 1 Jur. (Am. Ed.) 327, the court held the following instrument valid: "I agree to pay to Mr. C. Davies, or his order, £695 at four instalments, viz: £200 on June 10, 1833; £150 on the settling-day, after the St. Leger, at Doncaster; £150 on the settling-day, at Epsom, in 1834; £100 on the settling-day, after the St. Leger, in 1834; the remaining £95 to go as a set-off for an order of Reynolds to Mr. Thompson, and the remainder of his debt owing from Mr. C. Davies to him." Lord Denman observes, "This instrument is a note, up to a certain point, but the addition makes it an agreement. As to the second objection, that if it be an agreement, there is no consideration on the face of it, I think the promise in this case conveyed by the words, 'I agree to pay,' imports consideration." How these words import a consideration more than the words, "I promise to pay," is not perceived. The court seem to feel the practical inconvenience of their former decisions on this subject, and without overruling them expressly, are desirous of escaping from their consequences.

But in deciding the question now before the court, it appears to me, there need be no conflict with the English decisions. The guaranty here is by the defendants as indorsers of the note to the plaintiffs. The defendants are the assignees of the note, and they assign it to the plaintiffs. Now an ordinary indorsement, as between the indorser and the indorsee, is evidence under the general count for money had and received. And this effect is given to the indorsement although in fact money may not have been the consideration passing between the parties. Now, is not the transfer of this note by the defendants to the plaintiffs, at the time of the guaranty, sufficient evidence of consideration? In the act of making the guaranty the property in the note is assigned. And does not this import a consideration? The guarantors are not only parties to the note, but the responsibility they assume is the ground on which the plaintiffs purchase the note. There is, says Comyn on Contracts, an important distinction between a collateral guaranty on a separate paper, or without indorsement, that a bill shall be duly paid by the parties thereto, and the act of indorsing the instrument. The collateral guaranty is void unless it be in writing and signed, and be given upon a sufficient consideration. Where the guaranty or promise to pay the debt of another, is made at the same time with the contract to which it is collateral, is incorporated into it, and becomes part of it, the whole is one contract, and the want of consideration, as between the plaintiff and the guarantor, cannot be alleged. Leonard v. Vredenburg, 8 Johns. 29. And much less can a want of consideration be alleged by an assignor who in assigning a note guaranties the payment of it. This case is much stronger than the one cited from Johnson. The guarantor in that case, at the time the note is executed, guaranties its payment. He had no beneficial interest in the note, but was the mere surety of the maker. And as this was done at the time the note was given, the act of guaranty became incorporated in the note and constituted a part of it. The note may have been received on his credit, and he shall not set up a want of consideration. The same reason applies with greater force against the defendants. Their guaranty was not only an inducement to the plaintiffs to receive the note, but they were the holders and owners of the note, and as such were interested in selling and transferring it to the plaintiffs. They, it is true, undertake to pay the debt of the drawers of the note, but they do so that they may pass the note to the plaintiffs more readily, and at its full nominal value. If this be not the clear import of the transaction, both from the language of the guaranty, connected with the note and the assignment of it, and the averments in the declaration, I have failed to comprehend the subject. Where the party himself is benefited by the transfer, says Chitty on Bills (Ed. 1839) 272, it should seem that even his verbal promise would be valid. I cannot doubt that the defendants, under the circumstances of this case, cannot allege a want of consideration, and I think the guaranty is sufficiently set out in the third and other following counts.

The district judge, however, entertaining some doubts, as to the sufficiency of the

averments of the declaration, to admit the evidence, a proposition was made to certify the point to the supreme court, under the act of congress. But the plaintiffs' attorneys, to avoid delay, asked leave to amend the declaration, which was granted.