## HERENDEEN MANUFACTURING COMPANY v. HENRY D. MOORE.

Argued November 7, 1900—Decided February 25, 1901.

On the trial of a suit for the price of goods delivered to a subcontractor for use in a building on land owned by the defendant and erected with his funds, it was proved that the subcontractor, being denied credit for the goods, referred the seller's agent to the defendant and that the agent, by telephone, made inquiry of the defendant, through an employe who answered the call, and who, as he testified, reported at once the inquiry to the defendant, and, in his hearing, as admitted by the defendant, returned his reply. The substance of this telephonic conversation was disputed in the testimony. The version of the seller's agent was that he asked if the defendant would pay the bill of goods ordered and was told after a short interval that he would in these words: "I have just spoken to Mr. Moore. He will pay this bill for the goods." *Held—*

1. That it was legally permissible for the jury to accept the agent's version of the conversation as establishing the contract between the parties, and

2. That the promise proved was original, not collateral, and therefore need not, under the statute of frauds, be in writing in order to be actionable.

On defendant's rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON and COLLINS.

For the rule, *J. Fithian Tatem* and *Herbert A. Drake.*

*Contra, John W. Wescott.*

The opinion of the court was delivered by

COLLINS, J.    The plaintiff recovered a verdict against the defendant, at the Camden Circuit, for the price of a bill of goods furnished one Bridgam, a subcontractor, for the heating apparatus of a house in course of construction upon the defendant's land.    This house was erected under a duly-filed

written agreement made between a general contractor and William D. Sherrerd, the son-in-law of the defendant. The money to erect the house was furnished by the defendant, who afterwards conveyed curtilage and house to his daughter. Bridgam sought to purchase from the plaintiff, through its agent Barr, the goods in question, which he needed for his subcontract, but, on the uncontradicted testimony in the cause, was denied credit therefor, and thereupon referred the agent to the defendant, who, it is claimed by the plaintiff, agreed to pay for the goods. The main controversy under this rule has been, first, as to the sufficiency of the proof of the contract so claimed by the plaintiff, and second, as to its enforceability under the statute of frauds.

The dispute of fact was to what was said, through a telephone, by Barr and repeated at once to the defendant by Sherrerd, who was his employe and answered the call, and what was said in return by Sherrerd to Barr in the hearing of the defendant. Sherrerd testified to putting to the defendant a question from Barr and the defendant admitted that he authorized and heard the reply. The jury accepted Barr's version of the conversation as establishing the contract claimed by the plaintiff. This was legally permissible. The mere fact that the conversation was by means of a telephone does not put upon the plaintiff any greater burden of proof than that involved in the establishing of any oral contract made through an intermediary. In either case the accuracy or inaccuracy of remembrance of the language used, and the inherent probability or improbability of the respective versions of the conversations, are the essential elements to be considered by a jury in reaching a determination. In the case in hand, without reciting all the incidental proof tending to throw light on the transaction, it is sufficient to say that we are not satisfied that the verdict reached as to this matter of fact is against the clear weight of the evidence, and therefore it must stand.

Barr's testimony is that he asked Sherrerd if the defendant would pay the bill of goods ordered by Bridgam; that Sherrerd replied that the defendant was out, and that he

could not answer in a matter of that kind, and that he then continued, "Hold on, here is Mr. Moore now," and, after a short interval, added, "I have just spoken to Mr. Moore. It will be all right; he will pay this bill for the goods." It is argued for the defendant that this language would import a special promise to answer for the debt of another person, and that therefore, not being in writing, under the fifth section of the statute of frauds (*Gen. Stat., p.* 1603), no action can be brought to charge the defendant upon it. But this is a misconception. There was an unconditional promise, by the defendant, to pay for the goods. The credit was given to the defendant, not to Bridgam. The defendant did not promise to answer for any debt of Bridgam, for no such debt was contracted. The goods were, indeed, delivered to Bridgam, but that was entirely consistent with the assumption of a primary responsibility by the defendant to pay for them.

The promise found by the jury to have been made by the defendant was, within all the adjudged cases in this state, an original and not a collateral promise, and therefore did not need to be in writing to be actionable. *Hetfield* v. *Dow,* 3 *Dutcher* 440; *Hazeltine* v. *Wilson,* 26 *Vroom* 250; *Chesebrough* v. *Tirrill,* 32 *Id.* 628.

Complaint is made of the trial judge's failure to expressly instruct the jury that, in order to recover, the plaintiff had to establish his case by a preponderance of evidence. Such a burden on the plaintiff was postulated all through the charge. If the defendant wished an express instruction on the point, it was incumbent on him to request it. *Mead* v. *State,* 24 *Vroom* 601; *Camden, &c., Railroad Co.* v. *Williams,* 32 *Id.* 646.

The rule to show cause will be discharged.